364 P.2d 103

**GUNNISON–FAYETTE CANAL COMPANY,**
**Plaintiff and Respondent,**

v.

**Howard ROBERTS and F. Dwight**
**Malmgren, Defendants and**
**Appellants.**

**No. 9081.**

Supreme Court of Utah.

July 26, 1961.

McKay and Burton, Salt Lake City, for appellants.

Christenson, Novak, Paulson & Taylor, Salt Lake City, for respondent.

McDONOUGH, Justice.

Plaintiff commenced the action below to recover from the defendants their pro rata share of the expenses for the operation and maintenance of a canal which the parties used jointly. The case was tried to the court without a jury and from an adverse judgment the defendants appeal.

The plaintiff corporation operates and maintains the Gunnison-Fayette Canal which diverts water from the Sevier River at a point approximately one and one-half miles northwest of the community of Axtel, Utah, and conveys the water so diverted in a general northerly direction to the east of and paralleling the Sevier River for approximately 15 miles where the canal terminates in the Sevier Bridge Reservoir. The water conveyed by the canal was, at all times herein material, distributed by the plaintiff to its stockholders under water rights owned by it, and under private rights owned separately by some of its individual stockholders. The latter were known as Class AA rights.

The two defendants, stockholders in plaintiff corporation, received water under both of the above rights. The action below, however, concerned only that water which was distributed to the defendants during the year 1956 under their Class AA rights. The action was brought primarily for the purpose of establishing plaintiff's right to contribution from the defendants, as joint users of the canal, for their Class AA water rights' proportionate share of the costs for the maintenance and operation of the canal. Plaintiff founded its action upon Title 73, Chapter 1, Section 9, Utah Code Annotated, 1953, which provides:

> "When two or more persons are associated in the use of any dam, canal, reservoir, ditch, lateral, flume or other means for conserving or conveying water for irrigation of land or for other purposes, each of them shall be liable to the other for the reasonable expenses of maintaining, operating and controlling the same, in proportion to the share in the use or ownership of the water to which he is entitled."

Defendants' proportionate share for the year was computed, as were those of all other persons receiving water from the canal, on the basis of the amount of water each received as it related to the total cost of operating the canal. This charge

amounted to $1 per acre foot of water delivered.

Defendants by way of an affirmative defense claimed that the statute was not applicable by reason of an alleged agreement which the plaintiff had entered into with the defendant, Howard Roberts, on February 28, 1931, whereby Roberts was permitted to carry his Class AA water through the canal for the sum of $35 per year, conditioned upon Roberts granting a ten per cent interest in his water right in favor of the owners of the Sevier Bridge Reservoir in order that plaintiff could acquire storage rights therein at a reduction of only three per cent of its own water. Defendant Malmgren was made a defendant in the suit because he was the successor from various persons to a portion of the original Roberts' right covered by the alleged agreement. Defendants further alleged estoppel as an affirmative defense in that the contract had been recognized and acted upon by the parties for over 20 years.

Defendants admitted that no formal contract covering the agreement had been executed by the parties, but claimed that the contract was sufficiently evidenced by the general adjudication on the Sevier River known as the Cox Decree, by notes taken by defendant Roberts while he was the plaintiff's secretary, and by a minute entry in plaintiff's corporate minute book. The portion of the minute entry upon which defendants rely reads as follows:

"Motion by W. J. Gribble and Seconded by Elijah James. That the board accept the proposition of Howard Roberts to let him run his 1⁴⁄₁₀ s. f. of water less 10% of the same, in the Fayette Canal permanently for the sum of $35.00 per year. That the 10% is to go to the Sevier Bridge Reservoir for the credit of the Fayette Canal Company as agreed by Howard Roberts as part consideration for the Canal Company getting storage rights in said reservoir for 3% of the Fayette Canal Company water instead of 10%."

These minutes were written at the direction of the defendant Roberts who was then secretary and managing agent of the plaintiff corporation; and which position he held throughout the period 1928 to 1956. The notes upon which the defendants rely were written by Roberts personally. Although both the minute entry and the notes tend to support the existence of the alleged agreement, as they presently appear, the notes show signs of having been altered by various erasures and insertions, and the minute entry appears to have been erased and rewritten in a different handwriting. And the altered portion of the minute entry was also rewritten in a different color of ink from that of the unaltered portion.

In its reply to the defendants' answer, plaintiff denied that the claimed agreement had been made and alleged that the portion of the minute entry in question had been.

changed at the direction of Roberts to falsely show that the alleged agreement between the plaintiff and Roberts had been entered into at a board of directors meeting held on February 28, 1931. In support of this allegation plaintiff, during the course of trial, called several witnesses. J. Percy Goddard, a handwriting expert, testified that the portion of the minute entry hereinbefore set out had been erased with ink eradicator and rewritten in a handwriting different not only from that of the unaltered portion of the minute entry, but different from any other handwriting in the minute book as well. Goddard further testified that the altered portion of the minute entry was in the same handwriting as that which appeared on a letter marked as Exhibit No. 7 at the trial. This same letter was later identified by a subsequent witness as having been written by Howard Roberts' second wife, to whom he was married from 1936 until 1941. Plaintiff also called as a witness Elgin Mellor who was a director, and was present at the board of directors meeting on February 28, 1931. Mellor testified that the agreement arrived at in the meeting was to the effect that Roberts could convey his water through the canal upon condition that he pay to the plaintiff, rather than to the owners of the Sevier Bridge Reservoir as Roberts had claimed, 10% of his Class AA water right and $35 per year. Mellor also testified that the agreement decided upon was to be temporary from year to year.

On the basis of this evidence, the trial court found that the agreement as alleged had not been entered into and that instead the arrangement agreed upon had been temporary from year to year. Such a determination, when based upon conflicting evidence such as that which appears in this record, will not be upset unless it manifestly appears that the court has misapplied proven facts or made findings clearly against the weight of evidence. Cole v. Parker, 5 Utah 2d 263, 300 P.2d 623. We find no such error with regard to this finding.

In the absence of an enforceable agreement between joint users of a canal specifying the rights and obligations of the parties with respect to the payment of the canal's expenses, the statute (section 73–1–9, U.C.A.1953) is controlling.[1]

Defendants next contend that in any event they are liable for contribution for only that portion of the canal which was used to convey their water. They contend that the court erred in holding

---

1. West Union Canal Co. v. Thornley, 64 Utah 77, 228 P. 199; Perry Irrigation Company v. Thomas, 74 Utah 193, 278 P. 535; Hodges Irrigation Co. v. Swan Creek Canal Co., 111 Utah 405, 181 P. 2d 217; Peterson v. Sevier Valley Canal Co., 107 Utah 45, 151 P.2d 477.

them liable for contribution for the entire length of the canal when they used only some six miles of the 15-mile canal. With this contention we cannot agree. Section 73-1-9, U.C.A.1953, defines the basis upon which contribution is to be determined as being " * * * in proportion to the share in the use or ownership of the water to which he is entitled." Nothing in the foregoing section limits the proportionate share to only that portion of the canal used to convey the water. The statute bases the right to contribution upon the *use or ownership of the water* and not upon the proportion of the canal used. If the legislature intended by this statute that contribution should be based upon the proportionate share of the expenses for only that portion of a canal used for conveying the water of the joint user, such intent is not apparent from the language used. Furthermore, apportionment based upon the proportion of a canal actually used would place an impossible burden upon those responsible for making such an apportionment. This conclusion is also supported by the not uncommon practice among water users of a canal to sell or lease their water to other users along the canal. The record shows that the defendant Roberts, as an example, had for years followed just such a practice. To require apportionment under such circumstances would be unduly burdensome, impractical and unworkable.

◼ A more troublesome problem is that presented by the defendants' assignment of error with regard to the expenses for which they were held liable. They claim that as joint users of the canal they should not have been held proportionately liable for the total expenses of the plaintiff corporation, but rather, that their liability should extend only to those expenses which directly relate to the operation of the canal itself. They take particular exception to being held liable for any share of the purely administrative or corporate costs of the plaintiff, or for those costs which are based upon the projection of future canal improvements.

Plaintiff on the other hand, takes the position that all of the expenditures made by the company in 1956 were related to the operation and maintenance of the canal and that the defendants, therefore, were properly held proportionally liable for them. Plaintiff claims that under Section 73-1-9, supra, which states that with respect to joint users of a canal, each "* * shall be liable to the other for the *reasonable* expenses of maintaining, operating and controlling the same * * *," that the basis of the defendants' liability clearly extends to all such expenses as the cleaning, repair and maintenance of the canal and the installation of measuring devices, as well as to the services of the plaintiff's officers and watermaster in administering the canal.

■ This court has on several occasions been faced with the general problem of making a proper assessment to defray the cost of distributing the waters of an irrigation system.[2] Although the prior cases dealt only with assessments which were levied to defray the salary and expenses of water commissioners under Section 73–5–1, U.C.A.1953, rather than with an assessment based upon the right of contribution under Section 73–1–9, we believe that the rule which we adopted in those cases sets out the proper basis for an assessment in the situation with which we are here concerned as well. In Utah Power & Light Co. v. Richmond Irrigation Co., 115 Utah 352, 204 P.2d 818, 824, we stated the rule thus:

"Restating that mathematical exactness is not necessary for a valid assessment, and that the rule is—there should be a *reasonable relationship between the proportion of the cost of distribution to be individually borne and the benefits and services to be received,* we think an assessment should be levied against the Paradise Company on the same basis as that used to determine the levy imposed on other users." (Emphasis ours.)

Under this rule, it was error to hold the defendants proportionally liable for the total expenses of the plaintiff corporation, since a number of the expenditures had no relation to benefits received by the defendants whatsoever. The following expense items had no such reasonable relation to the distribution of the defendants' water as would justify their inclusion:

(1) Legal fees in filing a protest for and in behalf of the plaintiff corporation against a well application by a man by the name of Hansen.

(2) $203.73 for interest on a note at the Gunnison Valley Bank.

(3) $233.59 paid to the Utah State Engineer by Gunnison-Fayette Canal Co., based solely on the amount of water delivered to the Canal Co.

■ Inasmuch as the plaintiff has the burden of showing that all expenses for which contribution is sought are reasonably related to the cost of distributing the defendants' water, any expenses which do not affirmatively appear to be so related must be excluded. The above items are either clearly unrelated to the cost of distributing the defendants' water or do not affirmatively appear to be so related.

2. Bacon v. Gunnison Fayette Canal Co., 75 Utah 278, 284 P. 1004; Bacon v. Plain City Irr. Co., 87 Utah 564, 52 P.2d 427; Minersville Reservoir & Irr. Co. v Rocky Ford Irr. Co., 90 Utah 283, 61 P.2d 605; Utah Power & Light Co. v. Richmond Irr. Co., 115 Utah 352, 204 P.2d 818.

With respect to the inclusion of the expenditures for the rental of halls for stockholders and board of directors meetings, for the bond for the treasurer of the corporation and for the services of the water-master and other officers of the plaintiff, we believe them to be sufficiently related to the distribution of defendants' water to be properly included; as are those based on the projection of future canal improvements.

■ Incidentally, the lower court's finding that plaintiff was the sole owner of the canal must be set aside. This conclusion is compelled by the admission of plaintiff's counsel during the course of trial that the plaintiff was not owner of more than an undivided one-half interest in a portion of the canal and by the lack of any other evidence in the record which would support such a finding. However, this conclusion does not affect the judgment of the trial court with respect to the defendants' liability for their proportional share of the canal's expense.

The judgment of the trial court is affirmed as modified by items (1), (2) and (3) above.

HENRIOD and CALLISTER, JJ., concur.

CROCKETT, Justice (concurring—dissenting in part).

I concur in the result arrived at by the main opinion. However, I desire to make this observation by way of reservation from full concurrence with it: I do not think the statute referred to necessarily means that a canal owner's right to contribution must rest solely "upon the use or ownership of the water and not upon the proportion of the canal used."

If given such an interpretation it requires little imagination to postulate circumstances where gross inequities would exist. For example, assume A has a canal 50 miles long; B desires to develop water from a swampy area lying near the canal, but it must be transported a mile to arable land. Consistent with the policy of encouraging the development and use of water in the most economical manner, he should not be required to use land for a separate parallel canal; nor to dig one; nor to waste the water which conveyance in a separate canal would entail. For that reason Section 73–1–7, U.C.A.1953 entitles B to convey in the existing canal by making payment for doing so. Assume that his water bears any given ratio to the water already in the canal, such as one-fourth, one-third or one-half; it would shock one's sense of reason and justice to say that B must share that proportion of the expense of maintaining the canal over its entire 50-mile length. It is obvious that such an interpretation of the statute could be extremely unfair and unrealistic and may be

prohibitive of the development and use of water. I do not believe the legislature intended any such incongruity. Such a result should be avoided and when there is uncertainty as to how a statute should be interpreted, it is proper to resolve any doubt in favor of serving the acknowledged underlying purpose of our water law: that of providing the most feasible and economical means to develop and conserve our water resources.

It does no violence to the language of Sec. 73–1–9, U.C.A.1953, referred to in the main opinion, that when persons jointly use a canal: "each * * * shall be liable to the other for the reasonable expenses of maintaining, * * * the same, in proportion to the share in the use or ownership of the water * * *." to say that the sharing should be in proportion to the total water in the entire length of the canal. That is, in the example given above, if B has one-half of the water in the canal for only one mile and A has all of the water for 49 miles, plus one-half for one mile, the sharing in the expense would not be 50–50 based on the one mile segment. But it should be proportional to the water each owns in the canal along its entire length. Then they would be responsible in the ratio of 49½ miles for A and ½ mile for B. If the statute is so interpreted and applied, it provides a basis for a fair, equitable and practical result consonant with the purpose of encouraging the development, transportation and use of water.

Further support of that interpretation is found in considering a closely related statute: the next section but one before the statute under discussion, Sec. 73–1–7, which contains the provision authorizing this very joint use of the canal, states that where canals or ditches exist, another may have the right of way to convey water therein by "paying an *equitable* proportion of the maintenance of the canal or ditch jointly used. * * *" (emphasis added) It seems to the writer that this section makes it even clearer that the charge cannot properly be based upon the proportion of water owned and transported in a particular segment of the canal. It is much more logical and realistic to conclude that the charge, which the sections of the statute above referred to say must be "reasonable" and "equitable," should be arrived at by giving some consideration to all pertinent circumstances: not only to the portion of water transported at any given point, but to the distance each person's share must be transported, and perhaps to other factors from which the added water may cause greater expense in the maintenance of the canal, such as the nature of the terrain over which it passes, the original size of the canal and the amount of the enlargement required. And taking into consideration all of such matters, unless the charge made is such that it is clearly

"unreasonable" or "inequitable" this court would not disturb it.

It is my opinion that this case can and should be decided upon the ground that the charge made to the defendant cannot be classified as "inequitable" or "unreasonable." And for that reason the judgment should be affirmed except for the items indicated in the main opinion. But I do not think it proper to announce the law that the sharing in the canal expense should be solely on the basis of the proportion of the water used regardless of the distance it is transported.

WADE, Chief Justice (concurring).

I concur with the prevailing opinion of Mr. Justice McDONOUGH and think it meets the problems presented by this case. However, I also agree with Mr. Justice CROCKETT that under the statutes involved here the charge must be "reasonable" and "equitable" and under some situations, it would not be either reasonable or equitable to require a person who used only a small portion of a large irrigation system to pay the proportionate share of the operation of the entire irrigation system which his water which entered the system bears to all the water which was used in the system. However, I do not find any unreasonable or inequitable assessment here.